**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| MICHAEL G. MARTINEZ<br>Plaintiff, | §<br>§<br>§ |
| VS. | § CIVIL ACTION NO. 3:23-cv-00243<br>§ |
| WELLS FARGO BANK, N.A. d/b/a and<br>a/n/a WELLS FARGO BANK AND<br>WELLS FARGO f/n/a WELLS FARGO &<br>COMPANY<br>Defendant. | §<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S FIRST SUPPLEMENTATION TO PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

MICHAEL G. MARTINEZ, Plaintiff herein, files PLAINTIFF'S FIRST SUPPLEMENTATION TO PLAINTIFF'S ORIGINAL PETITION, supplements his complaint against WELLS FARGO BANK, N.A. d/b/a and a/n/a WELLS FARGO BANK AND WELLS FARGO f/n/a WELLS FARGO & COMPANY, Defendant herein, and shows unto the Court as follows:

I.

Defendant Wells Fargo Bank, N.A., removed this action from state court, and has made an appearance herein.

II.

**Rule 47, TRCP, Claims For Relief**

Pursuant to Rule 47, Texas Rules of Civil Procedure, Plaintiff's unliquidated damages are within the jurisdictional limits of the court. Plaintiff seeks monetary relief of $250,000.00 or less, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs; and Plaintiff seeks judgment for all other relief to which Plaintiff is entitled.

III.

**Background**

Plaintiff will show that at all material times herein, Defendant's employees were acting in the course and scope of their employment with Defendant and in furtherance of Defendant's business in connection with dealings and transactions with Plaintiff. As such, Defendant is liable for the conduct of its employees under the doctrine of *respondeat superior*.

Defendant is a multi-national, full-service banking institution with business locations in several Texas cities, including Friendswood. Plaintiff has been a customer of Defendant for many years and has owned several accounts with Defendant. Plaintiff purchased two (2) certificates of deposit (CD) from Defendant and regularly renewed and/or renegotiated same since 2007. Plaintiff primarily conducted business with Defendant at Defendant's branch ("community bank") located in Friendswood, Texas. Defendant represented to Plaintiff that Plaintiff had the right to access the CD funds at any time. Defendant also represented to Plaintiff that Plaintiff further had the right to withdraw or renegotiate the CD money at any time.

On February 20, 2020, Defendant entered into a Deferred Prosecution Agreement ("DPA") with the United States Attorney's Office, admitting that between 2002-2016, Defendant violated federal banking regulations and engaged in fraudulent conduct. Defendant was assessed a three (3) billion-dollar criminal penalty by federal authorities. Defendant entered into the DPA after a Department of Justice (DOJ), Federal Bureau of Investigation (FBI), and Securities and Exchange Commission (SEC) investigation. Despite Defendant's wrongdoings, Plaintiff continued to hold six (6) accounts with Defendant, including the aforementioned two (2) CDs. After renegotiating and renewing the CDs, each CD was valued at $55,274.34 in 2022-2023.

In 2022, Plaintiff communicated with an employee of Defendant at a local branch regarding the status of Plaintiff's CDs. Thereafter, Plaintiff renewed both CDs on November 20, 2022, and Defendant assigned maturity dates of June 20, 2023. On June 20, 2023, Plaintiff intended to renegotiate his CDs with Defendant or move his money to Chase Bank and open a CD with said money at a 4.25% interest rate, the CD rate offered by Chase Bank at the time. Had Defendant been unable to meet Chase Bank's CD terms, Plaintiff intended to withdraw his money from Defendant and open a CD at Chase Bank. On June 20, 2023, Plaintiff entered Defendant's bank branch in Coppell, Texas with the intention of restructuring his financial affairs – Plaintiff's CDs with Defendant have POD (Paid On Death) provisions for the benefit of Plaintiff's children. After meeting with Defendant's employee, Plaintiff was informed that both CDs were "closed" or "inactive" as of January 5, 2023, and had been sent to "unclaimed property". Plaintiff did not receive notice from Defendant that his CDs were "dormant", "closed", "inactive", or sent to "unclaimed property." Defendant did not "close" Plaintiff's CDs and mail his money with interest to Plaintiff as is the policy with other banks, such as Bank of America; rather, Defendant "closed" Plaintiff's CD accounts and did not mail Plaintiff his CD funds with accrued interest.

On June 29, 2023, Plaintiff received a call from Defendant's representative who informed Plaintiff that Defendant would not be tendering Plaintiff's CD money to Plaintiff. Plaintiff demanded his money from Defendant, but Defendant refused and continues to refuse to honor Plaintiff's CDs purchased from Defendant or tender Plaintiff his money.

While Plaintiff was attempting to recover his CD funds, Defendant informed Plaintiff that Defendant receives over 1,000 emails per day from Defendant's customers inquiring about their "closed" accounts that have been moved to "unclaimed property" status. In this connection, by

3

closing Plaintiff's CDs, Plaintiff has not only been deprived of his money used to purchase his CDs, but also the interest Defendant promised Plaintiff would receive in purchasing the CDs. This begs the question: Are Defendant's other customers whose accounts are closed deprived of the money used to fund their accounts and/or any interest related thereto?

IV.

## Causes of Action

Based on the foregoing allegations, Plaintiff seeks damages from Defendant based on the following legal theories:

1. Negligent Misrepresentation- in connection to this matter, the elements of negligent misrepresentation are:
    1. Defendant made a false material representation to Plaintiff that Plaintiff had access to his CD funds at any time during CD terms;
    2. Defendant knew that the representation was false or made it recklessly without any concern for its truth, knowing Defendant had federal and state law restrictions or limitations with respect to the representation made to Plaintiff;
    3. Defendant made the representation to induce Plaintiff or for Plaintiff to act (purchase and renew the CDs); and
    4. Plaintiff replied on the representation by purchasing and renewing the CDs, and Plaintiff has suffered harm.

2. Breach of Contract- in connection to this matter, the elements of breach of contract are:
    1. A valid contract existed between Plaintiff and Defendant. Plaintiff contracted with Defendant to purchase the CDs in question for a certain sum of money, and Defendant promised to return Plaintiff the funds plus stated or negotiated interest therein at the expiration of the CD terms;
    2. Plaintiff tendered the CD purchase money to Defendant;

    3. After Plaintiff performed by tendering the CD purchase funds to Defendant, Defendant breached the contract by not tendering Plaintiff's CD purchase money and interest thereon on June 20, 2023, the maturity date of the aforementioned CDs; and

    4. Plaintiff suffered damages as a result of Defendant's breach- Plaintiff has been deprived of $110,548.68 plus interest thereon

3. Conversion- in connection to this matter, the elements of conversion are:

    1. Plaintiff owned or was entitled to the CD money in question, that is, the $110,548.68;

    2. Defendant assumed and exercised dominion and control over the CD purchase funds ($110,548.68) in an unlawful and unauthorized manner to the exclusion of and inconsistent with Plaintiff's rights;

    3. Plaintiff demanded that Defendant return his money ($110,548.68); and

    4. Defendant refused to return Plaintiff the $110,548.68 in question.

4. Based on his conversation with Defendant's counsel, Plaintiff will not be pursuing his fraud and unjust enrichment claims against Defendant in this action.

V.

**<u>Damages</u>**

Defendant's acts and omissions proximately caused or were a producing cause of the following elements of damages Plaintiff has suffered:

1. The loss of $55,274.34 for each CD referenced above – a total of $110,548.68; plus 4.25% in interest beginning on June 20, 2023.

VI.

**Exemplary/Punitive Damages**

Based on the conduct of Defendant and the circumstances present, Plaintiff seeks exemplary/punitive damages from Defendant pursuant to Texas Law. In this regard, Plaintiff seeks uncapped exemplary/punitive damages from Defendant.

VII.

Plaintiffs seek pre-judgment interest at the maximum rate allowed by law.

VIII.

Plaintiffs seek post-judgment interest at the maximum rate allowed by law.

IX.

Jury Demand

Plaintiff hereby requests a jury trial

X.

Rule 193.7, T.R.C.P., Notice

Pursuant to Rule 193.7, T.R.C.P., Plaintiff hereby gives notice to any and all parties that documents produced in response to written discovery may be used against the party producing same in any pretrial proceeding and/or trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that he recover damages against Defendant, as specified herein, plus prejudgment interest, post-judgment interest, attorney's fees, costs of court, and all such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Michael G. Martinez*
MICHAEL G. MARTINEZ
Attorney At Law
Federal I.D. No. 3904
State Bar No. 13143150
564 S. Coppell Rd.
Coppell, Texas 75019
(281) 450-1997
mikegmartinezlaw@gmail.com
**ATTORNEY FOR PLAINTIFF-PRO SE**